UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE BARBER, ALVIN GLASPER,
and UNNAMED PLAINTIFFS 1 through
10,000, inclusive,

        Plaintiffs,                    Civil Action No.
                                                      11-cv-15449

vs.

BANK OF AMERICA, N.A., BAC HOME        PAUL D. BORMAN
LOAN SERVICING, L.P., f/k/a COUNTRYWIDE   UNITED STATES DISTRICT JUDGE
HOME LOAN SERVICING, L.P., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
ORLANS & ASSOCIATES, P.C., and EQUATOR
FINANCIAL SOLUTIONS, INC.,

        Defendants.
_____/

**OPINION AND ORDER
(1) DISMISSING DEFENDANT ORLANS & ASSOCIATES, P.C.,
(2) STRIKING DEFENDANT ORLANS & ASSOCIATES, P.C.'S MOTION TO DISMISS
(Dkt. No. 10), and
(3) GRANTING THE REMAINING DEFENDANTS' MOTION TO DISMISS (Dkt. No. 3)**

This is a mortgage foreclosure case. Nicole Barber and Alvin Glasper ("Plaintiffs") filed this action on October 20, 2011, in Wayne County Circuit Court. Defendants Bank of America, N.A. ("BANA"), BAC Home Loans Servicing, L.P. ("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Equator Financial Solutions, Inc. ("Equator"),[1] were served with a summons on November 18, 2011, and filed a Notice of Removal on December 12, 2011. (Dkt. No. 1.) In the

---

[1]On March 8, 2012, the parties stipulated to dismiss Defendant Equator with prejudice. (Dkt. No. 17.)

1

Notice of Removal, Defendants BAC, BANA, MERS, and Equator alleged that this Court has jurisdiction based on diversity under 28 U.S.C. § 1332, and that Defendant Orlans & Associates, P.C. ("Orlans"), a Michigan corporation, was fraudulently joined. (Notice of Removal ¶ 2e.) Plaintiffs did not file a motion to remand or otherwise raise any challenge to the allegation that Defendant Orlans was fraudulently joined.

Plaintiffs allege the following claims:

> I. Civil Conspiracy
> II. Illegal Foreclosure
> III. Loan Modification Violation
> IV. Promissory Estoppel
> V. Fraud by Misrepresentation
> VI. Silent Fraud
> VII. Fraud Based on Bad Faith Promise
> VIII. Breach of Fiduciary Duty
> IX. Michigan Mortgage Brokers, Servicers, and Lenders Act
> X. Unfair Business Practices

(Compl. at 6-13.)

On December 19, 2011, Defendants BAC, BANA, MERS, and Equator filed a Motion to Dismiss. (Dkt. No. 3.) On January 3, 2012, Defendant Orlans also filed a Motion to Dismiss. (Dkt. No. 10.) Plaintiff filed a Response to Defendants BAC, BANA, MERS, and Equator's motion on February 4, 2012, but did not respond to Defendant Orlans's motion. (Dkt. No. 12.) Defendants BANA, MERS, and Equator filed a Reply on February 24, 2012. (Dkt. No. 15.) Defendant Orlans also filed a Reply on February 24, 2012. (Dkt. No. 16.) Defendant Orlans' Reply noted that Plaintiffs had failed to respond to its Motion to Dismiss, and reiterated the arguments raised in its Motion.

On April 4, 2012, Plaintiffs filed an Ex Parte Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (Dkt. No. 18.) On April 13, 2012, the Court denied

Plaintiffs' motion, finding in part that Plaintiffs had failed to demonstrate a likelihood of success on the merits of their claims. (Dkt. No. 22.)

On January 8, 2013, Defendants BANA and MERS filed a Supplemental Brief discussing recent developments in the case law regarding Michigan's mortgage foreclosure laws. (Dkt. No. 24.)

The Court set seven different hearing dates for oral argument on the above motions, including three different dates in January 2013. All of the hearing dates have been cancelled due to scheduling conflicts or an attorney's illness. Because the motions have been fully briefed, having read the briefs, the Court concludes that oral argument is not necessary, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons stated below, the Court will:

(1) DISMISS Defendant Orlans pursuant to Federal Rule of Civil Procedure 21;

(2) STRIKE Defendant Orlans' Motion to Dismiss; and

(3) GRANT Defendants BAC, BANA, and MERS' Motion to Dismiss.

## I. BACKGROUND[2]

Plaintiffs Barber and Glasper are married. On February 27, 2007, Plaintiff Barber executed a promissory note and a $119,000 mortgage for property located at 4417 Kensington Avenue in Detroit, Michigan ("the 4417 Property"). In 2009, Plaintiffs moved to North Carolina and began leasing the 4417 Property to non-party Jerry Humphrey. In 2010, Plaintiffs attempted to obtain a loan modification of the mortgage on the 4417 Property, but their requests to the loan servicer were

---

[2] The facts alleged in the Complaint are accepted as true for purposes of this motion. *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

unanswered. (Compl. ¶ 17.) On August 24, 2010, Defendant MERS assigned the mortgage to Defendant BAC. (Compl. ¶ 18.) Shortly thereafter, foreclosure proceedings were initiated. The Sheriff's Deed on Mortgage Foreclosure reflects, in an Affidavit of Publication, that notice of foreclosure was first published in the Detroit Legal News on September 14, 2010. (Defs.' Mot., Ex. C., Sheriff's Deed.)[3] Further, an Affidavit of Posting reflects that notice of a foreclosure sale was posted to the 4417 Property on September 16, 2010. (*Id*.)

Plaintiffs returned to Michigan in December 2010 after Plaintiff Barber lost her job in North Carolina. However, Plaintiffs did not return to the 4417 Property, which was already in foreclosure as of September 2010. Instead, Plaintiff Barber entered into a lease agreement for property located at 2960 Field Street in Detroit, Michigan. In February 2011, Plaintiff Barber purchased, via a short sale, a home at 5966 Kensington in Detroit, Michigan ("the 5966 Property"), which is located on the same street as the 4417 Property. The Covenant Deed for the 5966 Property states that it conveys the property to "Nicole Barber, a married woman, whose address is 4417 Kensington, Detroit, MI 48224 . . . ." (Pls.' Resp., Ex. 4, Covenant Deed.)[4] Thus, the Covenant Deed for Plaintiff Barber's second house on Kensington states that Plaintiff Barber's address was the same as the 4417 Property, indicating that she was still living at the 4417 Property and not the 2960 Field

---

[3]The Court may consider documents outside of the Complaint on a motion to dismiss, without converting it into a motion for summary judgment, where the "document is referred to in the pleadings and is integral to the claims . . . ." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). The Court may also "consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id*. at 336. The Sheriff's Deed on Mortgage Sale is referenced in the Complaint at ¶ 27, is integral to Plaintiffs' claims that the foreclosure was illegal, and is a public record.

[4]Although not attached to the Complaint, the Covenant Deed is a public record which the Court may consider on a motion to dismiss. *See Commercial Money Ctr.*, 508 F.3d at 336.

Street address.

One month after Plaintiffs purchased their second Kensington property through a short sale, in March 2011, Plaintiffs contacted Defendant BANA and requested permission to short sale the 4417 Property to Plaintiffs' tenant, Mr. Humphrey. (Compl. ¶ 19.) Plaintiffs allege that they attempted three short sales – two in March 2011 and one in April 2011 – but all were rejected by Defendant BANA. (Compl. ¶¶ 21-24.) On April 20, 2011,[5] the 4417 Property was sold to the Federal Home Loan Mortgage Corporation at a sheriff's sale. (Defs.' Mot., Ex. C, Sheriff's Deed.) The Sheriff's Deed states a North Carolina address for Plaintiff Barber, even though she concedes that she was not living in North Carolina as of December 2010. (*Id*.)

Plaintiffs continued to attempt to short sale the 4417 Property to their tenant after the sheriff's sale. On July 14, 2011, Defendant BANA denied a fourth short sale attempt, stating that "[t]he current short sale has been closed because it was opened in error." (Compl. ¶ 25, Ex. A, Short Sale Decline Letter.) Nevertheless, Defendant BANA told Plaintiffs' counsel to attempt another short sale. (Compl. ¶ 26.)

On September 28, 2011, Plaintiffs attempted a fifth short sale of the 4417 Property to their tenant. Defendant BANA declined this short sale on October 11, 2011, stating:

> A possible non-arms length connection was found between seller Nicole Barber . . . and buyer Jerry Humphrey . . . as they are potential relatives/associates, both residing at the subject property. At this time it is our recommendation to decline this short sale transaction due to being non-arms length.

(Compl. ¶ 31, Ex. C, Short Sale Decline Message.)

---

[5]The Complaint alleges that the sheriff's sale took place on March 20, 2011 (Compl. ¶ 27), but the Sheriff's Deed reflects that it occurred on April 20, 2011.

Plaintiffs' redemption period for the 4417 Property expired on October 20, 2011.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

## III.  ANALYSIS

### A.  Fraudulent Joinder

As an initial jurisdictional matter, the Court must consider whether Defendant Orlans, a non-diverse party, was fraudulently joined as a Defendant.  "In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed."  *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).  "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 431 (6th Cir. 2012) (citation omitted).  In determining whether a non-diverse defendant was fraudulently joined, "[t]he relevant inquiry is whether there is a colorable basis for predicting that a plaintiff may recover against a defendant."  *Id*. at 433 (citation and punctuation omitted).

Defendants' Notice of Removal states:

> Plaintiff's [sic] Complaint fails to state a colorable cause of action against Orlans.  None of any of these ten causes of action allege any specific wrongdoing by Orlans.  Instead, they all arise out of Orlan's capacity as MERS's local legal counsel.  Additionally, Orlans is an improperly joined defendant because Plaintiff has no possibility of establishing a cause of action against Orlans.  Indeed, Orlans, as

6

> counsel for MERS, owes no duties to Plaintiff for foreclosing on the Property, and cannot be liable to Plaintiff for carrying out the wishes of its client, MERS.

(Notice of Removal ¶ 2e.)

There are only two allegations in the Complaint, one in Count I and one in Count X, that specifically mention Defendant Orlans. Those allegations are as follows:

> That at all times during the periods complained of in this Complaint, Defendants [BANA], BAC, Countrywide, Equator and Orlans and any alleged claiming entities as beneficiaries to the alleged February 2007 promissory note were engaged in a joint venture amongst themselves and with unknown third parties.

(Compl. ¶ 40.)

> That Orlans and MERS participated in a fraudulent assignment leading to BAC being able to fraudulently execute a sheriff sale on Plaintiff's property.

(Compl. ¶ 106.)

There are no factual allegations that describe any wrongful actions taken by Defendant Orlans. The allegations in paragraphs 40 and 106, quoted *supra*, appear to refer to actions that Defendant Orlans took as legal counsel for Defendant MERS. Michigan courts "have been reluctan[t] to permit an attorney's actions affecting a nonclient to be a predicate to liabiltiy because of the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client." *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 254 (1997). Furthermore, Plaintiffs have failed to allege any specific facts showing a fraudulent act by Defendant Orlans, when the fraud occurred, which of Defendant Orlans' agents participated in the fraud, or how Plaintiffs relied on the fraud to their detriment. *See* MCR § 2.112(B)(1) (providing that under Michigan pleading standards "allegations of fraud . . . must be stated with particularity."); *see also Cooper v. Auto Club*

*Ins. Ass'n*, 481 Mich. 399, 414 (2008) (noting that "fraud must be pleaded with particularity . . . .").

Defendants have thus shown that there is no colorable basis under Michigan law for predicting that Plaintiffs may recover against Defendant Orlans. The Court therefore finds that Defendant Orlans was fraudulently joined and is a dispensable party. Accordingly, the Court will dismiss Defendant Orlans from this matter pursuant to Federal Rule of Civil Procedure 21.[6]

The Court notes that Defendant Orlans has filed a Motion to Dismiss in this matter. (Dkt. No. 10.) However, because it is a non-diverse party, the Court has no jurisdiction under § 1332 to determine Defendant Orlans' motion. *See Yuille v. Am. Home Mortg. Servs., Inc.*, No. 10-2564, 2012 WL 1914056, at *2 n. 1 (6th Cir. 2012) (noting that a district court exceeded its limited jurisdiction under § 1332 by granting a motion to dismiss filed by a non-diverse, fraudulently joined defendant, but that the error was harmless because "[t]he district court . . . could have dropped him under Fed. R. Civ. P. 21." (Punctuation omitted)). The Court will therefore strike Defendant Orlans' Motion to Dismiss, as this Court has no jurisdiction to hear the motion.

**B. Illegal Foreclosure Claims (Count II)**

Defendants argue that Plaintiffs lack standing to assert any interest in the Property because their right of redemption has expired. Michigan law provides that, after the expiration of the redemption period, all right, title, and interest in a foreclosed property vests in the buyer at the foreclosure sale.

> Unless the premises described in [a foreclosure sale] deed shall be redeemed within the time limit for such redemption . . . such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs and assigns, all the right, title, and interest

---

[6] Federal Rule of Civil Procedure 21 provides in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party."

8

> which the mortgagor had at the time of the execution of the mortgage, . . . and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed . . .

Mich. Comp. Laws § 600.3236.

Two recent cases have clarified the law in Michigan regarding a plaintiff's right to sue after foreclosure proceedings.

In *Mitan v. Federal Home Loan Mortgage Corporation*, --- F.3d ---, 2012 WL 6200257 (6th Cir. Dec. 12, 2012), the Sixth Circuit analyzed the plaintiff's claim that the defendant bank had foreclosed on his property in violation of Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204(4)(f). *Id*. at *3. This section prohibits foreclosure by advertisement where "[t]he mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement." *See* Mich. Comp. Laws § 600.3204(4)(f).

The Sixth Circuit found that the plaintiff had demonstrated a question of fact as to whether the defendant had approved the plaintiff for a loan modification. *Mitan*, *supra* at *5. The Sixth Circuit also held that the plaintiff had standing to sue, even though the post-foreclosure redemption period had passed. *Id*. at *3. The Sixth Circuit noted that, under Michigan law, "[s]tructural defects . . . render the foreclosure absolutely void." *Id*. (citing *Davenport v. HSBC Bank*, 275 Mich. App. 344, 347-48 (2007). The Sixth Circuit then reasoned that a violation of § 3204(4)(f) constituted a structural defect in the mortgage foreclosure process. *Id*. The defendant bank thus had no authority to foreclose and, as a result, the redemption period was not triggered:

> as a matter of Michigan law, a lender that fails to follow the loan-modification procedures set forth by the statute has engendered a structural defect and is thus without authority to commence a foreclosure. Without a valid foreclosure, the redemption period has not begun, and the owner of the property retains an interest conferring standing to sue.

9

*Id.*

In *Kim v. JP Morgan Chase Bank, N.A.*, No. 144690, 2012 WL 6858059 (Mich. Dec. 21, 2012), the Michigan Supreme Court held that a bank's violation of § 3204 rendered a foreclosure sale "voidable rather than void *ab initio*." *Id.* at *8. In so holding, the Michigan Supreme Court overruled *Davenport v. HSBC Bank*, *supra*, which provided the basis for the Sixth Circuit's holding in *Mitan* that the redemption period had never had never begun. *Id.* The Michigan Supreme Court stated, "*Davenport*'s holding was contrary to the established precedent of this Court. We have long held that defective mortgage foreclosures are voidable." *Id.* at *7. The Michigan Supreme Court then held as follows:

> Therefore, we hold that defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*. . . . We leave to the trial court the determination of whether, under the facts presented, the foreclosure sale of plaintiffs' property is voidable. In this regard, to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute.

*Id.* at *8.

Plaintiffs in the instant case cannot bring the same claim as the plaintiffs in *Mitan* and *Kim*, because § 3204 only prohibits foreclosing "a mortgage of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act . . . ." Mich. Comp. Laws § 600.3204(d)(4). The general property tax act defines "principal residence" as:

> the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established.

Mich. Comp. Laws § 211.7dd(c).

Plaintiff Barber admits that she was living and working full time in North Carolina in 2009. Plaintiffs did not request a loan modification until 2010. (Compl. ¶ 17.) Furthermore, Plaintiffs' argument that Defendants fraudulently prevented the short sale of the 4417 Kensington Road property undermines any argument that they were using that property as their principal residence. After Defendants accused Plaintiff Barber of attempting a non-arms-length transaction, Plaintiffs allege that their counsel "emailed several documents . . . to substantiate that this was an arms-length transaction." (Compl. ¶ 32.) If Plaintiff Barber was attempting to short sale the home to which "she intend[ed] to return and . . . continue [to use] as a principal residence[,]" the short-sale transaction would clearly not be arms length.

Even if Plaintiffs could state a claim for illegal foreclosure under § 3204, they have failed to show that they would be "in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, *supra*, at *8. Plaintiff Barber alleges that she had purchased and was residing at a different home on the same street in Detroit when Defendants denied her attempts to short sale the 4417 Property. In the instant Complaint, Plaintiffs do not seek to retain an interest in the 4417 Property, but rather to have the foreclosure voided so that the short sale can be completed, and to recover monetary damages.

Plaintiffs' admitted attempts to short sale the 4417 Property undermine any argument that their interest in the property was prejudiced by Defendants' noncompliance with the foreclosure statute. Plaintiffs' requested relief includes "That Defendant be Ordered to allow the short sale of Plaintiffs' properties." (Compl. 14, ¶ 4.) While Plaintiffs do seek to void the foreclosure, they have not brought a quiet title claim, and do not otherwise claim that their interest in retaining the 4417

11

Property was prejudiced. Rather, Plaintiffs' damages only involve repairing Plaintiff Barber's credit history, monetary damages, and ordering the short sale. Accordingly, Plaintiffs cannot establish sufficient prejudice to render the foreclosure sale of the 4417 Property voidable pursuant to § 3204.

In summary, Plaintiffs cannot claim that Defendants violated the foreclosure by advertisement statute, § 3204, because the foreclosed property was not Plaintiffs' principal residence. Even if Plaintiffs could raise a § 3204 claim, their claim must fail because Plaintiffs cannot demonstrate sufficient prejudice to render the foreclosure of the property void. Accordingly, the Court will dismiss Count II of the Complaint.

**C. Loan Modification Violation (Count III)**

Plaintiffs' claims in Count III are based on Defendant BANA's participation in the Home Affordable Modification Program ("HAMP"). Specifically, Plaintiffs allege that Defendant BANA "failed to comply with HAMP when it fraudulently misled Plaintiff into thinking that she would be able to short sale her property." (Compl. ¶ 57.)

Plaintiffs' claims in Count III are based on the theory that Plaintiffs are third-party beneficiaries under the Service Provider Agreement ("SPA") between Defendants and the Federal National Mortgage Association, or Fannie Mae. Plaintiffs cite as support for their argument *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009). In *Astra*, the Ninth Circuit held that certain federally funded medical clinics ("340B entities") were entitled to sue drug manufacturers based on a statute establishing Pharmaceutical Pricing Agreements ("PPAs") between the drug manufacturers and the Department of Health and Human Services ("HHS"). *Id*. at 1241. The Ninth Circuit reasoned that, even though there was no private right of action under the statute, the medical clinics were third-party beneficiaries under federal common law. *Id*.

However, the reasoning of the Ninth Circuit was rejected by the United States Supreme Court on appeal. *See Astra USA, Inc. v. Santa Clara County, California*, 131 S.Ct. 1342 (2011).[7] The United States Supreme Court held as follows:

> The County's argument overlooks that the PPAs simply incorporate statutory obligations and record the manufacturers' agreement to abide by them. The form agreements, composed by HHS, contain no negotiable terms. . . . A third-party suit to enforce an HHS-drug manufacturer agreement, therefore, is in essence a suit to enforce the statute itself. The absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead. The statutory and contractual obligations, in short, are one and the same.

*Id.* at 1348.

The same reasoning applies in the instant matter. There is no private right of action provided under HAMP. The terms of the SPA are not negotiable, and a suit by an alleged third-party beneficiary to enforce the HAMP agreement would essentially be a suit to enforce the statute itself. Furthermore, other Eastern District of Michigan courts, including this Court, have rejected attempts to bring claims against a foreclosing party under HAMP. *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Loeffler v. BAC Home Loans Servicing, L.P.*, No. 11-13711, 2012 WL 666750, at *4 (E.D. Mich. Feb. 29, 2012). Accordingly, Count III of the Complaint fails to state a cognizable claim, and will therefore be dismissed.

**D. Civil Conspiracy (Count I) and Fraud (Counts IV-X)**

Defendants argue that Counts IV-X are barred by the statute of frauds.

---

[7]The Court notes that Plaintiffs do not cite the United States Supreme Court decision in *Astra* in their brief, and do not make any attempt to otherwise justify their reliance on the now-overruled Ninth Circuit decision that preceded *Astra*.

Michigan's Statute of Frauds provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

MCL § 566.132(2).

Plaintiffs' claims in Counts IV-X are premised on Defendants' allegedly granting Plaintiffs approval to short sale the property. Plaintiffs have not, however, alleged that any written, signed agreement guaranteed Defendants' approval for a short sale. Plaintiffs have also not attached any written, signed agreement to the Complaint evidencing a promise to allow Plaintiffs to short sale the 4417 Property. Accordingly, any claims based on Defendants' alleged promise to grant Plaintiffs a short sale of the 4417 Property are barred by Michigan's statute of frauds and must be dismissed.

Defendants argue that Plaintiffs' civil conspiracy claim must fail because Plaintiffs have failed to allege a separate, actionable tort. "A claim of civil conspiracy must be based on an underlying actionable tort." *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 507 (2004), overruled on other grounds, *Titan Ins. Co. v. Hyten*, 491 Mich. 547 (2012).

Plaintiffs argue that their civil conspiracy claim is based on Defendants' alleged fraud in leading Plaintiffs to believe that a short sale was possible. However, Plaintiffs' fraud claims are barred by Michigan's statute of frauds, as noted *supra*. Thus, Plaintiffs' civil conspiracy claim must

also be dismissed.

### E.  Michigan Mortgage Brokers, Servicers, and Lenders Act (Count IX) and Unfair Business Practices (Count X)

Plaintiffs allege that Defendants violated the Michigan Mortgage Brokers, Servicers, and Lenders Act ("MMBSLA"), Mich. Comp. Laws § 445.1672, by failing to conduct business in accordance with law, by engaging in fraud, and by purposely misleading Plaintiffs into believing they could short sale the Property.  (Compl. ¶¶ 101-03.)  The MMBSLA states:

> It is a violation of this act for a licensee or registrant to do any of the following:
>
> (a) Fail to conduct business in accordance with law, this act, or a rule promulgated or order issued under this act.
>
> (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act. . . .

Mich. Comp. Laws § 445.1672(a)-(b).

Defendants contend that Defendant MERS is not an entity that is required to register under the MMBSLA, and is thus not subject to its provisions.  Mich. Comp. Laws § 445.1656(1) provides that the MMBSLA applies to, *inter alia*, "[a] mortgage broker, mortgage lender, or mortgage servicer approved as a seller or servicer by the federal national mortgage association or the federal home loan mortgage corporation[;]" and "[a] mortgage broker, mortgage lender, or mortgage servicer approved as an issuer or servicer by the government national mortgage association."  Defendants also argue that Defendant BANA is exempt from the MMBSLA because it explicitly does not apply to "[a] depository financial institution whether or not the depository financial institution is acting in a capacity of a trustee or fiduciary."  Mich. Comp. Laws § 445.1675(a).  The act defines "depository financial institution" as "a state or nationally chartered bank . . . ."  Mich.

Comp. Laws § 445.1651a(f).

Plaintiffs' Response does not address Defendants' arguments regarding the MMBSLA.

Plaintiffs' claims under the MMBSLA fail. The act does not apply to Defendant BANA, which Plaintiffs concede is a nationally chartered bank. (Compl. ¶ 6.) The act also does not apply to Defendants MERS or BAC. *See Ridha v. Mort. Elec. Registration Sys. Inc.*, No. 10-13824, 2010 WL 4867416, at *3 (E.D. Mich. Nov. 23, 2010) (finding that the MMBSLA does not apply to MERS, BAC, or BANA, and dismissing claims).

Plaintiffs allege that Defendants "committed unlawful, unfair, and/or fraudulent business practices" in violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903. (Compl. ¶ 105.)

Michigan courts have held that banks are exempt from the provisions of the MCPA when conducting residential mortgage loan transactions. *Newton v. West*, 262 Mich. App. 434, 438-39 (2004) (noting that the MCPA exempts transactions and conduct "specifically authorized" by law, and concluding "that the residential mortgage loan transactions fit squarely within the exemption.").

Plaintiffs have not responded to Defendants' arguments regarding the MCPA.

Plaintiffs' claim under the MCPA are dismissed. The failed short sale transaction that serves as the basis for Plaintiffs' claim is a transaction "specifically authorized" by law, and is thus excluded from the MCPA.

Accordingly, in addition to being barred under the Michigan statute of frauds, Counts IX and X of the Complaint must be dismissed because Defendants are exempted from the provisions of the MMBSLA, and because the MCPA does not apply to the residential mortgage loan transaction at issue in the instant case.

16

## V. CONCLUSION

For the reasons stated above, the Court will:

(1) **DISMISS** Defendant Orlans pursuant to Federal Rule of Civil Procedure 21;

(2) **STRIKE** Defendant Orlans' Motion to Dismiss; and

(3) **GRANT** Defendants BAC, BANA, and MERS' Motion to Dismiss.

This is a final order and closes the case.

SO ORDERED.


        S/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated: January 30, 2013

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 30, 2013.

        S/Denise Goodine
        Case Manager